THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ROBIN A. CUNNINGHAM,**

    **Plaintiff,**

    v.

**SOUTHWEST AIRLINES,**

    **Defendant.**

**Civil No. 21-1328 (ADC)**

## OPINION AND ORDER

**I.**     **Introduction**

The case of caption was transferred to this Court from the U.S. District Court for the Middle District of Florida pursuant to an order from the Hon. Judge Kathryn Kimball Mizelle. **ECF No. 42**. At the time of transfer, defendant Southwest Airlines' ("Southwest") motion to dismiss the complaint filed by plaintiff Robin A. Cunningham ("plaintiff") remained partially pending. *See* **ECF No. 13**.[1] Southwest moves the Court to rule on the pending grounds for dismissal under Fed. R. Civ. P. 12(b)(6). *See* **ECF No. 51**. Having considered the motion to dismiss

---

[1] The transferor court denied defendant's statute of limitations argument but refrained from ruling on the additional grounds for dismissal, which had already been fully briefed. Instead, it opted to transfer the case to this Court for their resolution. *See* **ECF No 42** at 5 ("Southwest raises a host of other reasons to dismiss, but the Court grants Southwest's motion to transfer venue, ([ECF] 13), concluding that the federal district where the acts forming the basis of Cunningham's complaint is better situated to address these remaining arguments for dismissal in the first instance."). Why the transferor court could not rule on the remaining grounds for dismissal is not clear. This Court is no better situated than the transferor court to analyze the sufficiency of the complaint.

as well as plaintiff's opposition at **ECF No. 30**, the Court, for the reasons set forth below, **GRANTS IN PART, DENIES IN PART** Southwest's motion.

II. **Legal Standard**

It is well settled that in reviewing a motion for failure to state a claim upon which relief can be granted, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation and internal quotation marks omitted). Only "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

The First Circuit has established a two-prong test to evaluate "plausibility" under Fed. R. Civ. P 12(b)(6). *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. Plausible "means something

more than merely possible." *Id.* (citing *Iqbal*, 556 U.S. at 678-79). To survive a Rule 12(b)(6) motion, a plaintiff must allege more than a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "If the factual allegations in a complaint, stripped of conclusory legal allegations, raise no 'more than a sheer possibility that a defendant has acted unlawfully,' the complaint should be dismissed." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Rodríguez-Reyes*, 711 F.3d at 53, and *Iqbal*, 556 U.S. at 678).

In performing this analysis, the Court may consider "(a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss." *Schatz*, 669 F.3d at 55-56 (cleaned up).

### III. Plaintiff's Allegations

According to the allegations in the complaint, plaintiff worked for Southwest as a customer service agent in the Ronald Reagan National Airport ("DCA") for four years. **ECF No. 1** at ¶¶ 8, 10. In May of 2018, she applied for a customer service agent position with Southwest in Puerto Rico and began working here on June 1, 2018. *Id.*, at ¶¶ 12-13. Plaintiff is black, female, and is not a native Spanish speaker but alleges that speaking Spanish was not part of the job's requirements. *Id.*, at ¶¶ 16, 18, 45. She alleges that she was the "only black and non-Spanish speaking employee at this location." *Id.*, at ¶¶ 48, 64, 79.

Plaintiff further alleges that she received discriminatory treatment from her fellow coworkers as they would speak Spanish around her, intentionally exclude her from

conversations, and interrupt her interactions with customers. *Id.*, at ¶¶ 17, 18, 19, 49, 50. Plaintiff also alleges that customers discriminated against her. *Id.*, at ¶ 20.

In particular, plaintiff alleges that on July 30, 2018, a customer began rudely yelling at her for not being able to speak Spanish and another customer attempted to "physically attack" her. *Id.*, at ¶¶ 21, 22. She alleges that she removed herself from the situation and went to a break room to wait for instruction while a station administrator investigated the incident. *Id.*, at ¶¶ 23-26. The station administrator did not speak to her or ask her about the incident. *Id.*, at ¶¶ 25, 53. A supervisor later came to talk to her, but the station administrator interrupted the conversation and began speaking to the supervisor in Spanish, so plaintiff could not understand what was being discussed. *Id.*, at ¶¶ 27-30, 35. The supervisor told plaintiff that the station administrator only said that the incident needed to be documented, a statement she did not believe. *Id.*, at ¶¶ 31-32. She alleges that she mentioned to her supervisor that it added insult to injury when they spoke Spanish in front of her knowing that she could not fully comprehend what was being said. *Id.*, at ¶ 36. She was later told that she could write her personal statement of the incident. *Id.*, at ¶ 37. Once finished, she handed it to the supervisor, who told her that she had been suspended. *Id.*, at ¶ 41.

Plaintiff was terminated shortly thereafter. *Id.*, at ¶ 42. Plaintiff alleges that she was terminated "despite similarly situated Spanish[-]speaking employees committing terminable offenses and receiving no discipline." *Id.*, at ¶¶ 55, 72, 86. She alleges that these actions amount

to racial discrimination (*id.*, at ¶ 56) and workplace retaliation (*id.*, at ¶ 72), and demonstrate the existence of a hostile work environment (*id.*, at ¶ 87).

Plaintiff filed an administrative charge of discrimination before the Equal Employment Opportunity Commission ("EEOC"). *Id.*, at ¶ 5. The EEOC charge alleged discriminatory treatment in the form of workplace retaliation based on plaintiff having filed "multiple complaints to [Southwest's] management about discriminatory behaviors from [her] coworkers" and her subsequent suspension and termination. *See* **ECF No. 13-2** at 2 (copy of EEOC charge submitted by Southwest). After investigating the claim, the EEOC issued a dismissal and a notice of right to sue on August 25, 2020. *Id.*, at ¶ 6.

## IV. Discussion

Southwest seeks to dismiss all three causes of action included by plaintiff in her complaint. Although not presented in this order, for convenience, the Court will list and analyze Southwest's arguments as follows.

First, Southwest argues that the complaint should be dismissed in its entirety because it is an impermissible "shotgun pleading." **ECF No. 13** at 12-13. Second, Southwest argues that plaintiff's disparate treatment on the basis of race (Claim One) and hostile work environment (Claim Three) claims should be dismissed because she failed to exhaust administrative remedies. *Id.*, at 10-12. Third, Southwest argues that Claim One must also be dismissed because plaintiff failed to sufficiently plead the existence of comparators and that race was a motivating factor behind her allegedly disparate treatment. *Id.*, at 14-17. Fourth, Southwest argues that plaintiff's

claim for retaliation (Claim Two) fails because she has not plead that she was retaliated against for engaging in protected conduct. *Id.*, at 17-19. Fifth, Southwest argues that Claim Three also fails because the alleged harassment was not based on a protected characteristic, the alleged conduct was neither severe nor pervasive, and because Southwest cannot be responsible for the actions that plaintiff alleges constitute a hostile work environment. *Id.*, at 19-23.

### A.     The "shotgun pleading rule" challenge.

At the outset, the Court notes that much, if not all, of the parties' briefs rely on Eleventh Circuit case law. This is neither unexpected nor improper, given that this case originates from the Middle District of Florida and the motions were filed while the case was pending in that court. However, it is the rule both in the First and Eleventh Circuits that "when one district court transfers a case to another, the norm is that the transferee court applies its own Circuit's cases on the meaning of federal law." *Alexandre v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 22 F.4th 261, 271 (1st Cir. 2022) (quoting *AER Advisors, Inc. v. Fid. Brokerage Servs., LLC*, 921 F.3d 282 (1st Cir. 2019)); *see also Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008) (quoting *Murphy v. FDIC*, 208 F.3d 959, 965 (11th Cir. 2000)).

As a result, the disposition of Southwest's first argument—that the entire complaint must be dismissed as it is an impermissible "shotgun pleading"—is simple. This argument rests entirely on Eleventh Circuit case law that is not controlling here. While it may be good policy to apply a rule that would dismiss inartfully drafted claims, the First Circuit has not found it proper to adopt one. *Cf. U.S. ex rel. Est. of Cunningham v. Millennium Lab'ys of California, Inc.*, 713 F.3d

662, 664 n. 2 (1st Cir. 2013) (denying challenge to a "shotgun pleading" under Fed. R. Civ. P. 12(b)(1)). Therefore, the Court finds that the "shotgun pleading rule" is unavailing as a stand-alone basis for dismissing the complaint under Fed. R. Civ. P. 12(b)(6).

**B.     The exhaustion of remedies challenges as to Claims One and Three.**

Southwest argues that plaintiff failed to exhaust administrative remedies prior to filing suit because her claims for racial disparate treatment and hostile work environment were not part of the administrative charge that she filed before the EEOC.

As a condition precedent to filing a suit in federal court under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, Pub. L. 88-325, § 701 *et seq.*, a plaintiff must usually first exhaust administrative remedies. *See Franceschi v. U.S. Dep't of Veterans Affs.*, 514 F.3d 81, 85 (1st Cir. 2008); *Reynoso v. DeJoy*, No. CV 21-1566 (FAB), 2023 WL 2232107, at *3 (D.P.R. Feb. 27, 2023) (citing *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990) and additional authorities). This normally entails filing an administrative charge before the EEOC, which "provide[s] the employer with prompt notice of the claim and [creates] an opportunity for early conciliation." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996) (citing *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir. 1990). "Consequently… in employment discrimination cases, the scope of [a subsequently filed] civil complaint is… limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." *Id.* (cleaned up).

Plaintiff's EEOC charge was included as an exhibit to Southwest's motion to dismiss. *See* **ECF No. 13-2** at 2. Plaintiff alleged in the complaint that she filed such a document (**ECF No. 1**

at ¶¶ 5-6) and relied on Southwest's exhibit in her opposition to the motion. *See* **ECF No. 30** at 11-12. The Court considers that the EEOC charge is a document that is fairly incorporated into the complaint and one whose authenticity is not reasonably in dispute. It being essential to the resolution of Southwest's motion as well as to ascertaining the proper scope of plaintiff's claims, the Court may examine its contents at this motion to dismiss stage. *See Schatz*, 669 F.3d at 55-56.

The EEOC charge consists of a short, one-page form filled out and electronically signed by plaintiff on September 12, 2018. **ECF No. 13-2** at 2. In it, as pointed out by Southwest, plaintiff marked only that she suffered discrimination based on retaliation, leaving blank other options such as race, color, and sex. *Id.* In her description of the particulars, she mentions that she had "filed multiple complaints to management about discriminatory behaviors from [her] coworkers." *Id.* She also stated that she was not given a reasonable explanation for the discriminatory treatment and that she "believed" that she had been "discharged in retaliation for engaging in a protected activity…." *Id.* Plaintiff appears to have filed her charge *pro se*.

The question is whether this information was enough to reasonably expand the scope of the EEOC's retaliation investigation to cover plaintiff's new claims of disparate treatment and hostile work environment. Importantly, when answering this question and in the context of a *pro se* complainant, "the administrative charge is [to be] liberally construed in order to afford the complainant the benefit of any reasonable doubt…. [A]n employee is not required to comprehensively set forth with 'literal exactitude' all of the facts and theories upon which his or her claim is based." *Lattimore*, 99 F.3d at 464 (citations omitted). Nevertheless, in formulating her

EEOC charge, plaintiff needed to "describe the essential nature of the claim and to identify the core facts on which it rest[ed]." *Id.* Plaintiff cannot assert in court claims of a different nature and based on a different set of facts than those raised in the earlier administrative charge.

Turning to the substance of the charge at issue, it is clear that plaintiff did not claim that she was treated differently on the basis of race or that she was subject to a hostile work environment. Plaintiff's retaliation claim, however, essentially translates to having been retaliated against by her employer for complaining about discriminatory behavior by her coworkers. The merits of the retaliation claim are thus dependent on an investigation into the underlying facts of plaintiff's complaints about her coworkers. A reasonable investigation would therefore have necessarily touched upon the underlying behavior object of her complaints. As plaintiff now alleges in her judicial complaint, she believes this discriminatory behavior was on account of her race and inability to speak Spanish.

Therefore, taking the facts in the light most favorable to plaintiff, the Court finds that the disparate treatment and hostile work environment claims, although not laid out with "literal exactitude" in the EEOC charge, were nonetheless conceivably within its scope. At this stage of the proceedings, Southwest's exhaustion challenge fails to pass muster.

**C. The plausibility challenges as to plaintiff's First, Second, and Third Claims.**

**1. Claim One: failure to plead comparators and race as motivating factor.**

Plaintiff alleges that Southwest terminated her employment because of her race and failed to take disciplinary measures against "similarly situated Spanish[-]speaking employees

committing terminable offenses and receiving no discipline." **ECF No.1** at ¶¶ 55, 56, 72, and 86. Southwest attacks plaintiff's claim on the basis that the complaint fails to allege that she "was treated less favorably than a similarly situated individual outside her protected class." **ECF No. 13** at 14 (quoting *DeCosta v. ARG Res., LLC*, No. 12-23482-CV, 2012 WL 12865835, at *2 (S.D. Fla. Dec. 7, 2012)) (cleaned up).

> Section 703 of Title VII makes it unlawful for an employer:
>
> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> **(2)** to limit, segregate, or classify his employees… in any way which would… adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). These two proscriptions are "often referred to as the 'disparate treatment' (or 'intentional discrimination') provision and the 'disparate impact' provision…." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). In the First Circuit, a complaint raising a disparate treatment claim based on race discrimination:

> need not plead facts… that establish a prima facie case under Title VII, *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014). Rather, the complaint simply must contain facts that "<u>plausibly</u> allege" that the plaintiff experienced discriminatory employment action. *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012).

*Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 271 (1st Cir. 2022) (emphasis in original). Accordingly, so-called comparator evidence is not an element of a Title VII race discrimination claim—

although it is "powerful support." *Id.*, at 275 n. 10 (citing *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003)).

For this reason, regardless of whether plaintiff plausibly alleged that other similarly situated employees were treated more favorably, the Court will not dismiss plaintiff's first cause of action based on the absence of an explicit comparator allegation alone. However, that is not the only arrow in Southwest's quiver. Southwest also claims that plaintiff failed to allege that "race played any role in Southwest's decision-making." **ECF No. 13** at 15. And on this point, the Court is inclined to agree.

A holistic review of the complaint shows that the gravamen of the allegations is that plaintiff suffered discrimination for not being a native Spanish speaker. For instance, plaintiff only mentions her race in conclusory fashion and in passing, and almost always in conjunction with her being a non-Spanish speaker:

> 16. … Plaintiff was being treated differently because she is black and not a native Spanish speaker.
> …
> 45. Plaintiff is a black female.
> …
> 48. Plaintiff was the only black and non-Spanish speaking employee at this location.
> …
> 61. Plaintiff is a black female.
> …
> 64. Plaintiff was the only black and non-Spanish speaking employee at this location.
> …
> 76. Plaintiff is a black female.
> …

> 79. Plaintiff was the only black and non-Spanish speaking employee at this location.

**ECF No. 1** at 2, 5-6, and 8.

In contrast, the allegations describing the discriminatory conduct all revolve around her not being a native Spanish speaker. *See*, *e.g.*, *id.*, at 1 at 1 ¶ 16 ("Plaintiff was being treated differently because she is black and not a native Spanish speaker."); at 3 ¶ 18 ("It was apparent that because Plaintiff did not speak Spanish, her coworkers looked at her as less of an employee and as if she was unable to do her work…), at 3 ¶ 19 ("It was also apparent because when other employees, including her supervisors, would speak around her, they would speak in Spanish as to intentionally exclude her from the conversation."); at 4 ¶ 35 ("It is evident that the administrator and supervisor did not intend for Plaintiff to know what was said because of their election to speak Spanish in front of Plaintiff despite both individuals being able to speak fluent English."); at ¶ 36 ("… it adds insult to injury when they speak Spanish around her knowing that she does not fully comprehend the language."); at ¶ 39 ("Plaintiff told [a] coworker that she did not feel supported by her or any of the other employees that saw her getting attacked simply because she did not speak Spanish."); and at 5 ¶¶ 49, 65, 80 ("Employees would routinely speak Spanish around Plaintiff so that she would not know what was being said.").

None of the well-pleaded allegations in the complaint can be read to spell out a claim for disparate treatment on the basis of race. This, despite her repeated invocation of race discrimination as the basis for her claims. *See* **ECF No. 1** at 5 ¶ 46, at 6 ¶ 62, and at 8 ¶ 77

("Plaintiff is a member of a protected class who was subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964."). These amount to no more than conclusory allegations. Plaintiff at no point in the complaint attempted to explain the connection between her race and the claims. The Court, therefore, cannot reasonably infer from these allegations that Southwest terminated her on the basis of her race.

Apparently noticing this incongruency, plaintiff raised in her opposition to the motion to dismiss that she was discriminated against not only because of her race, but also because of her national origin. To wit, plaintiff argues that:

> [v]iewed in the light most favorable to Plaintiff, the Complaint alleges sufficient facts to suggest that Defendant intentionally discriminated against Plaintiff on the basis of her race and national origin when it fired her…. On a consistent basis throughout the course of Plaintiff's employment, Defendant's agents and supervisors made discriminatory comments about Plaintiff pertaining to her race/national origin by the way of language discrimination. The close temporal proximity between Plaintiff's complaints of remarks related to her race, language and national origin to her superiors and her subsequent firing supports a plausible inference that she was fired because of these factors…. Moreover, the sequence of events—from the racially-charged remarks, to Defendant's subsequent negative evaluations, discipline, and eventual termination of Plaintiff—suggest the same."

**ECF No. 30** at 15.

This narrative is hard to square with the allegations plaintiff included in her complaint. First, the complaint does not contain any mention of discrimination based on national origin, nor does it even state what plaintiff's national origin is. Second, the complaint does not include any allegation of a discriminatory comment, much less any "racially-charged remarks" by Southwest's agents or supervisors based on plaintiff's race or national origin—only that some

of them spoke Spanish in her presence. Third, the complaint lacks any allegations of negative evaluations, and the only disciplinary measure that is mentioned is that she was suspended immediately after the July 30, 2018, incident occurred and was later terminated.

Evidently, plaintiff wrote her complaint with the intent of predicating her claims on race discrimination, but the underlying factual allegations do not support that reading. Because plaintiff has failed to plausibly allege that Southwest terminated her employment because of her race, her disparate treatment claim based on race is hereby **DISMISSED WITH PREJUDICE**.

### 2. Claim Two: failure to plead retaliation in response to protected activity.

In Claim Two, plaintiff alleges that after she "spoke out against the intentional act of using Spanish to hide conversation[s] around her," Southwest suspended and later terminated her from her employment. **ECF No. 1** at ¶ 72. Specifically, she alleges that after the July 30, 2018, incident, she informed her Southwest supervisor and/or station administrator that "it added insult to injury that they would intentionally speak Spanish around her with full knowledge that she did not fully understand what was being said." *Id.*, at ¶ 71.

Southwest, for its part, argues that "[c]omplaining about Spanish speaking at the workplace is not a protected activity within the meaning of Title VII." **ECF No. 13** at 17. Southwest further contends that plaintiff's alleged complaints, if validated as protected conduct under Title VII, would result in it having to implement "a policy which, in all likelihood would violate Title VII" itself. *Id.*, at 18 (quoting *Webb v. R & B Holding Co., Inc.*, 998 F. Supp. 1382, 1390 (S.D. Fla. 1998)).

Section 704 of Title VII makes it unlawful "for an employer to discriminate against any of his employees… because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]" *Franchina v. City of Providence*, 881 F.3d 32, 45 (1st Cir. 2018) (quoting 42 U.S.C. § 2000e-3(a)) (alterations in original). To state a retaliation claim, the complaint "must contain plausible allegations indicating that the plaintiff opposed a practice prohibited by Title VII and suffered an adverse employment action as a result of that opposition." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 226 (1st Cir. 2012). The employee's opposition or "protected conduct" need not be a "formal" opposition, such as initiating or participating in a Title VII charge or investigation, but may also encompass "informal" opposition, such as complaining to a supervisor about conduct constituting an unlawful employment practice. *See id.*, at 45 ("Retaliation to informal opposition of a discriminatory employment activity is… sufficient to violate Title VII."). "As with racial discrimination claims… [plaintiffs] must simply allege facts that give rise to a plausible inference that retaliation occurred." *Frith*, 38 F.4th at 276–77 (citing *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014)).

Here, plaintiff alleges that she was retaliated against for not being able to speak Spanish, but also premises her claim on having been retaliated against on the basis of her race. *See* **ECF No. 1** at ¶ 62. In her opposition to the motion to dismiss, she argues that:

> …on the heels of Plaintiff's complaints of racial discrimination to management, she began to receive unfounded corrective and disciplinary reports. This included reports for actions her Spanish speaking counterparts were not disciplined or

terminated for. Following Plaintiff's reports of discrimination, Plaintiff was terminated from her position.

**ECF No. 30** at 16. Much like her narrative regarding her alleged national origin claim, this description of the facts does not find support in the complaint, as nowhere there does plaintiff mention any "corrective and disciplinary reports." Further, as explained previously, the facts alleged in the complaint do not state a claim for discrimination based on race, which is the underlying "unlawful employment practice" being complained of.

Nonetheless, the complaint alleges that plaintiff was suspended and later terminated after complaining to her Southwest supervisor and/or station administrator about their speaking Spanish in her presence. And the law does not require that the employer's complained of conduct actually consist of an unlawful employment practice under Title VII, only that the employee have a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Frith*, 38 F.4th at 277 (cleaned up). Under this standard, even though Southwest's conduct may not amount to racial discrimination as plaintiff claims, plaintiff may plausibly have believed that it did. That belief, coupled with the allegation that she was suspended and later terminated because of her opposition to this conduct, is enough to plead a claim for retaliation.

For this reason, the Court **DENIES** Southwest's request to dismiss plaintiff's retaliation claim.

### 3. Claim Three: failure to plead elements of hostile work environment claim.

Plaintiff alleges in Claim Three that the complained-of actions of Southwest employees were "severe and pervasive enough to alter her work environment." **ECF No. 1** at ¶ 87. Plaintiff specifically singles out her co-workers, her supervisor, and a station administrator for "intentionally speaking Spanish around [p]laintiff to conceal conversation." *See id.*, at ¶¶ 80, 81, 85, 87. She also emphasizes that her coworkers stood "idly by as she was attacked by customers for not speaking Spanish" in reference to the July 30, 2018, incident. *See id.*, at ¶¶ 23, 39, 40, 83, 87. In addition, plaintiff points to her coworkers' "continuous unsolicited interference with her transactions with costumers." *See id.*, at ¶¶ 17, 87. As with her other causes of action, plaintiff alleges that this allegedly discriminatory conduct was because to her race. *See id.*, at ¶ 77.

Southwest, for its part, maintains that these allegations do not state a claim for hostile work environment because the alleged harassment was not based on a protected characteristic, the alleged conduct was neither severe nor pervasive, and because Southwest cannot be responsible for the actions that plaintiff alleges constitute a hostile work environment. **ECF No. 13** at 19-23.

Under Title VII, "plaintiffs may establish a violation… by demonstrating that an employer required them to work in a hostile or abusive environment." *Franchina v. City of Providence*, 881 F.3d 32, 45 (1st Cir. 2018) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Such an environment arises when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (cleaned up).

A successful hostile work environment claim must show that:

> [t]he challenged conduct… be both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact did perceive it to be so. In performing this inquiry, a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

*Maldonado-Cátala v. Mun. of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017) (cleaned up); *see also Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 91 (1st Cir. 2018). And moreover, "an employee claiming harassment must demonstrate that the hostile conduct was directed at [her] because of a characteristic protected by a federal anti-discrimination statute." *Rivera-Rivera*, 898 F.3d at 94 (quoting *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7-8 (1st Cir. 2006)) (brackets in original).

The Court recalls that plaintiff "need not plead facts in the complaint that establish a prima facie case, [but rather] simply must contain facts that plausibly allege that the plaintiff experienced a discriminatory employment action." *Frith*, 38 F.4th at 271 (cleaned up). But even applying this standard, plaintiff's allegations that Southwest is responsible for creating a hostile work environment due to her race fall short of being plausible.

Plaintiff alleges that during her brief two-month employment with Southwest in Puerto Rico, her coworkers intentionally and repeatedly spoke in a language she did not fully understand. She alleges that speaking Spanish was not part of the job description posted by Southwest. She also alleged that her coworkers' conduct—speaking in Spanish to her

customers—interfered with her ability to do her job. But "federal employment discrimination laws do not establish a general civility code for the workplace." *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 318 n. 9 (1st Cir. 2016) (citation and quotation marks omitted). And nowhere in the complaint is there a sufficiently plausible factual allegation attributing these actions to her race. Therefore, even though some of the aforementioned allegations of workplace conditions could possibly meet some of the requirements for a hostile work environment, the complaint fails to plausibly allege that Southwest created this environment because of plaintiff's race. *See id.*, at 318 ("[E]ven if [plaintiff's] complaints rise to the level of a hostile work environment, [plaintiff] has not demonstrated that he was subjected to any of the complained of actions because of his race."). The allegations are not sufficient to nudge the claim from the merely possible to the plausible. For this reason, the Court **DISMISSES WITH PREJUDICE** plaintiff's hostile work environment claim based on racial discrimination.

## V. Conclusion

For the reasons set forth above, the Court **GRANTS IN PART, DENIES IN PART** Southwest's motion to dismiss at **ECF No. 13**. Accordingly, plaintiff's first and third causes of action relating to disparate treatment and hostile work environment on the basis of race, respectively, are **DISMISSED WITH PREJUDICE**.[2] Southwest's request to dismiss plaintiff's

---

[2] The Court offers no opinion on whether plaintiff could have raised a claim of discrimination on the basis of national origin.

second cause of action stating a retaliation claim, however, is **DENIED**. The case will proceed only as to plaintiff's retaliation claim.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 15h day of May 2024.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**